**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

| | | |
|---|---|---|
| ERIN AVINA, Individually, and as | * | |
| Personal Representative of | * | |
| PEDRO DANIEL AVINA-SANCHEZ, | * | CASE NO. 3:25-cv-00393 |
| Deceased, and as mother and/or custodian of | * | |
| the surviving minor children CAM, IV, VMNA, | * | |
| and SGA | * | |
| | * | |
| Plaintiffs, | * | JURY REQUESTED |
| v. | * | |
| | * | |
| SWIFT TRANSPORTATION CO. OF | * | |
| ARIZONA, LLC, DENNIS JACOBSEN, | * | |
| and MARY ANN JACOBSEN, | * | |
| | * | |
| Defendants. | * | |

---

**AMENDED COMPLAINT**

---

COME NOW Plaintiffs, Erin Avina, Individually, as Personal Representative for Pedro Daniel Avina-Sanchez, Deceased, and as mother and/or custodian of the surviving minor children CAM, IV, VMNA, and SGA, files their Amended Complaint, and shows unto the Court as follows:

A.  This Amended Complaint is filed as a "matter of course" pursuant to FRCP 15(1) within 21 days of the filing of the original Complaint on August 13, 2025 [Doc1].

B.  No Answer has been filed to the original Complaint as of the date and time of filing.

## PARTIES

1.      Erin Avina is the wife of decedent Pedro Daniel Avina-Sanchez and the mother and or Custodian of his three minor children: CAM, IV, VMNA, and SGA.

2.      Pedro Daniel Avina-Sanchez was domiciled in the State of Tennessee at the time of the wreck, and Erin Avina individually, and as personal representative, is domiciled in the State of Tennessee, together with the minor children, at the time of this filing.

1

3.     Defendant, Swift Transportation Company of Arizona, LLC, doing business as, Swift Transportation (hereinafter referred to as "Swift"), is a corporation organized in the State of Delaware, principally doing business in Arizona, and transacting business in the State of Tennessee on the date at issue.  Swift is part of Knight-Swift Transportation Holdings Inc. (NYSE: KNX).

4.     Swift can be served, according to the Federal Motor Carrier Safety Administration, with a copy of the Amended Complaint and Summons through its registered agent, National Registered Agents, Inc., 300 Montvue Road, Knoxville, TN  37919-5546.

5.     Swift is registered with U.S. Department of Transportation under DOT number 54283 and MC-136818.

6.     Defendant Dennis Jacobsen is a resident of the State of Utah and can be served with a Summons and Amended Complaint at 8650 South 3640 West, West Jordan, Utah 84088.

7.     Defendant Mary Ann Jacobsen is a resident of the State of Utah and can be served with a Summons and Amended Complaint at 8650 South 3640 West, West Jordan, Utah 84088.

8.     A collision involving the parties occurred on August 14, 2024, hereinafter "The Wreck."

## JURISDICTION AND VENUE

9.     All preceding statements of Plaintiffs' Amended Complaint are incorporated herein and realleged as if expressly set forth herein.

10.     Jurisdiction is proper to this Court pursuant to 28 U.S.C. §1332 as complete diversity between the parties exist and an amount in controversy over $75,000.00.

11.     Venue is proper to this Court pursuant to 28 U.S.C. §1391(a) because the wreck giving rise to the action occurred in Anderson County, Tennessee.

2

## STATEMENT OF FACTS

12.     All preceding statements of Plaintiffs' Amended Complaint are incorporated herein and realleged as if expressly set forth herein.

At all relevant times:

13.     The Plaintiffs were members of the public.

14.     Plaintiffs were not employees of Defendants.

15.     Driving tractor-trailers on the roads of America is dangerous, potentially causing injury and death, unless skillfully and carefully done.

16.     As a result of the potential dangers of tractor-trailers, the Federal government requires all interstate trucking companies to be licensed.

17.     As a result of the potential dangers of tractor trailers, the Federal government requires all drivers of a commercial tractor trailer to have a commercial driver's license (CDL).

18.     The Federal government requires CDL driver applicants to know the minimum transportation industry standards for safety set forth in the Commercial Driver's Manual of the various states.

19.     Before issuing a CDL to a driver, the issuing state requires the driver applicant to pass a test on the material contained in the states' Commercial Driver's Manual.

20.     Once licensed, the trucking company is issued public authority to operate tractor trailers in interstate transportation.

21.     The U.S. Department of Transportation, through the Federal Motor Carrier Safety Administration (FMCSA), issues the public authority to operate to the trucking company.

22.     Companies authorized by the FMCSA to use tractor trailers on the road in interstate transportation receive a DOT number.

3

23.     Defendant Swift is an interstate common carrier based out of Phoenix, Arizona.

24.     Defendant Swift was a for-hire motor carrier operating tractors and trailers to transport property in interstate commerce at all relevant times.

25.     The provisions of 49 CFR §§ 301-399, commonly referred to as the "Federal Motor Carrier Safety Regulations" or "FMCSR" are applicable to this case and Defendants Swift, Dennis Jacobsen, and Mary Ann Jacobsen were subject to, and were required to obey these regulations at the time of the wreck and prior to the wreck.

26.     Defendant Swift is the owner of the tractor involved in the wreck, operated by Defendants Jacobsen.

27.     Defendant Swift is the owner of the trailer involved in the wreck, operated by Defendants Jacobsen.

28.      Swift is an authorized for-hire motor carrier with 12,940 tractors and 12,833 drivers according to its 08/05/2025 MCS-150 form. (filed as shown on the Safer. FMCSA.DOT.GOV website.)

29.     In 2024 Swift tractors travelled 1,258,397,013 miles. *(Id.)*

30.     The size of Swift, and the miles its tractors travel on the nation's roadways, show that Swift was aware prior to the events described herein, and at all other relevant times, of applicable minimum industry standards, rules, regulations, and laws governing it and its commercial drivers.

31.     Defendants Dennis Jacobsen and Mary Ann Jacobsen were employees and/or agents of Defendant Swift.

32.     Swift has a duty to hire safe drivers to drive its tractors.

4

33.     Swift has the capacity to determine the safety, fitness, and suitability of the drivers of its trucks on Tennessee's roads, highways, and interstates.

34.     Swift has the sole control of who drives its tractors.

35.     In its 2016 Swift Driver Handbook, p.3., Swift's Safety Policy Statement includes the following:

    a.    "At Swift Transportation the safety of Swift people, the general public, and our customers is of utmost importance to us."

    b.    "Safety is and has always been one of our key cultural values and of highest priority."

    c.    "Safety is the responsibility of everyone including our professional drivers, our shop technicians, our office staff and all levels of leadership."

    d.    "We believe Safety is more than simply following the Federal, State, and Local laws and regulations."

    e.    "…we provide the newest, best maintained equipment in the industry."

    f.    "We want everyone to always make it to their Most Important Stop-Home."

    g.    "The people of our organization are singularly focused on achieving a Crash-free and Injury-free workplace."

    h.    "Always be Safe by Choice, Not by Chance."

36.     All Swift Drivers are required to read the Swift Driver Handbook. ("We expect each Driver to read this Driver Handbook carefully…" *Id.*, p.5)

37.     " All employees, officers, and board of Swift members are expected to: … Comply with applicable rules and regulations of federal, state, provincial and local governments, and other appropriate private and public regulatory agencies." *Id*., p.14

38.     Defendant Swift has a duty to maintain the tractor and trailer to ensure the safety of citizens on the roads, interstates, and highways.

39.     Defendant Swift has a duty to properly equip its tractors and trailers to ensure the safety of citizens on the roads, interstates, and highways.

5

40.     Defendant Swift has a duty to properly hire, retain, supervise and train its commercial drivers to ensure the safety of citizens on the roads, interstates, and highways.

41.     Defendant Swift maintains a driver ranking system, to include the Jacobsens.

42.     The Driver Ranking system at Swift operates as follows (*Id*., p.117):

**DRIVER RANKING**
The driver ranking system was designed to reward and recognize company drivers for their performance. We will provide you with a weekly review of how you are performing in the following areas: preventable accidents, on time pick up and delivery, and utilization. Based on your performance in each of these metrics, we will establish a rank for you through an evaluation process of specific requirements for each metric. There will be a ranking of Diamond, Platinum, Gold, Silver, or Bronze. Talk to your Driver Leader for more details. It is important to understand how to maximize your earnings potential through superior performance.

43.     Defendant Swift has a duty to ensure that its drivers were medically fit pursuant to the FMCSR.

44.     Defendant Swift has a duty to ensure its drivers were not fatigued pursuant to the FMCSR.

45.     Defendant Swift has a duty to train its drivers on the dangers of distracted driving.

46.     Defendant Swift has a duty to train its drivers, to specifically include Defendants Jacobsen, on the dangers of fatigued driving and following the hours of service regulations.

47.     Defendant Swift has a duty to train its drivers, to specifically include Defendants Jacobsen, on the dangers of fatigued driving due to sleep conditions such as sleep apnea.

48.     Swift and its drivers, to include the Jacobsens, were aware at all times that fatigue is a dangerous condition causing wrecks, including fatal wrecks.

49.     The Swift Driver Handbook states the following about fatigue (*Id.,* p.64):

Fatigue kills. When you are tired you must sleep. Identifying when you are tired is extremely important. Here are some of the ways to recognize when you are tired:

- Eyes close or go out of focus by themselves.
- Trouble keeping your head up.

6

- Frequent yawning.
- Squirming in your seat, wandering disconnected thoughts.
- Can't remember driving the last few miles.
- You missed your exit.
- Keep drifting out of your lane.
- Your speed becomes variable.
- Tailgating the vehicle in front of you.
- Frequently change lanes for no apparent reason.
- Driving slow in the high speed lane.
- You are braking for no apparent reason.

If you have determined that you are tired, take the following steps immediately.
- Turn off your cruise control.
- Roll down a window and get some fresh air.
- Talk on the C-B.
- Pull over in a safe place and get some sleep.

**WHEN YOU ARE TIRED, SLEEP IS THE ONLY THING THAT WILL HELP ! ! ! !**
*(emphasis in original)*

50.    "All Swift Drivers must meet DOT Rules and Regulations (*see* [FMCSR] Section 391) to be hired and continue driving for the Company." *Id.* p.53

51.    Swift "Company drivers must use a Swift [medical] Clinic or a Swift approved clinic." *Id*.

52.    "Hours of service are regulated to ensure safer trucking operations." *Id.* p.54

53.    Defendant Swift has a duty to train its drivers on the dangers in using handheld electronic devices.

54.    Defendant Swift has a duty to train its commercial drivers to follow the laws of the states they were driving through.

55.    Defendant Swift has a duty to train its commercial drivers on the safety steps required when approaching and entering construction zones.

56.    Defendant Swift has a duty to train its drivers to properly inspect the tractors and trailers to ensure they are in safe working order before driving them on the roads, highways, and interstates with the motoring public.

57.    Swift drivers are required to perform a pre-trip inspection (*See Id.,* p.57):

7

a. Before they leave a terminal.

b. Any time they have been off-duty for 8 or more consecutive hours.

c. Any time they drop one trailer and pick up another.

58.     Defendants Dennis Jacobsen and Mary Ann Jacobsen knew, or should have known, of the dangers of distracted driving.

59.     Defendants Dennis Jacobsen and Mary Ann Jacobsen knew, or should have known, of the dangers of using hand held electronic devices while driving.

60.      Defendants Jacobsen knew that it was their responsibility to check the brakes on the tractor and the trailer.

61.     Defendant Swift places the duty to inspect the brakes and ensure they were safe and in good operating order on its drivers.

62.     The Swift Driver Handbook states (*Id.,* p.107):

**BRAKES**
The quality of the brakes on your equipment could be the difference between life and death for you and everyone around you.  **It is the Driver's responsibility to inspect the brakes on his equipment.**

63.     Defendants Swift and/or the Swift drivers Jacobsen had the opportunity to

a. Plan the route;

b. Equip the tractor with collision avoidance systems (CAS); forward collision warning systems (FCW); Automatic Emergency Braking (AEB); and/or collision mitigation systems (CMS);

c. Retrofit, or require the use of, a tractor with collision avoidance systems (CAS); forward collision warning systems (FCW); Automatic Emergency Braking (AEB); and/or collision mitigation systems (CMS);

d. Maintain the tractor trailer brakes;

e. Inspect the brakes before proceeding into the road construction on Interstate 75;

f. Take heed of the multiple slow traffic and road construction signs;

g. Keep a safe following distance;

8

h.  Drive in an alert, non-fatigued state;

i.  Not use handheld electronic devices;

j.  Speed that was in excess of the posted speed for the construction zone;

k.  Failure to see the brake lights and slowing traffic ahead.

64.    Swift and its drivers were aware, before the wreck, that the following common contributing factors cause wrecks and need to be eliminated, and if not eliminated, prevented through proper safety equipment, training, and actions to include (*Id.,* p.60):

- Inattention
- Improper scanning techniques
- Poor time management
- Poor space management
- Not allowing for the mistake of other Drivers
- Not enough training
- Failure to adjust to conditions
- Attitude
- Driver impairment
- Vehicle failure

65.    Defendant Swift uses Lytx drive camera (DriveCam) system (the Lytx System)  on its tractors, including the tractor involved in the wreck.

66.    **"WHAT IS DRIVECAM?** DriveCam consists of an inward and outward facing video event recorder that can provide information in the event of an accident and can also help correct unsafe driving behaviors." (*Id.*, p.83)

67.    The Lytx system creates event clips of, potentially or actually, unsafe commercial driver actions. Event clips monitored by the Lytx System include (*Id.*, p.84):

9

**DRIVECAM CORRECTIVE ACTION PROCESS**

Below are some unsafe observed behaviors that will result in disciplinary action. If multiple behaviors are observed in one situation, the level of diciplinary action will be determined by the most egregious behavior.

| Coached Behaviors Rolling 12 Months – Based on a rolling 12 month cycle | 1st offense | 2nd offense | 3rd offense |
|---|---|---|---|
| Aggressive | 2nd Warning | 3rd/Final Warning | Terminate |
| Aggressive – Level 2 | 2nd Warning | 3rd/Final Warning | Terminate |
| Cell Phone – Handheld | 3rd/Final Warning | Terminate | |
| Cell Handheld – Observed | 3rd/Final Warning | Terminate | |
| Cell Handheld – Distraction | 3rd/Final Warning | Terminate | |
| Cell HandFree – Distracted | 2nd Warning | 3rd/Final Warning | Terminate |
| Drowsy | 3rd/Final Warning | Terminate | |
| Electronic Device – Distraction | 2nd Warning | 3rd/Final Warning | Terminate |
| Falling Asleep | 3rd/Final Warning | Terminate | |
| Following too Close | 2nd Warning | 3rd/Final Warning | Terminate |
| Other Communication Device Distraction | 3rd/Final Warning | Terminate | |
| Reckless Driving | 2nd Warning | 3rd/Final Warning | Terminate |
| Red Light | 3rd/Final Warning | Terminate | |
| Rolling Stop | 2nd Warning | 3rd/Final Warning | Terminate |
| Speeding | 2nd Warning | 3rd/Final Warning | Terminate |
| Stop Sign | 3rd/Final Warning | Terminate | |
| Too Fast for Conditions | 2nd Warning | 3rd/Final Warning | Terminate |
| Unsafe Lane Change | 2nd Warning | 3rd/Final Warning | Terminate |
| U-Turn | 2nd Warning | 3rd/Final Warning | Terminate |
| Unusual Event – this is coded when drugs, alcohol, or firearms are observed | Refer to DERS | | |

68.     The Lytx Event clips are then sent to Swift with the drivers' recorded action.

69.     Defendant Swift received Lytx an event clip of the wreck.

70.     Defendant Swift had the right to obtain 100 hours or more of video of the tractor involved in the wreck from Lytx.

71.     The Lytx device on the tractor has up to 400 hours of recording capability. "...[DriveCam] detects over 100 risk indicators, and helps manage compliance with DOT regulations.  With up to 400[#] hours of recording time and live-streaming features..."[1]

---

[1] https://www.lytx.com/drivecam-event-recorder#:~:text=With%20up%20to%20400%23%20hours,cameras%20support%20fleet%20safety%20programs?
*(Last visited 8/11/2025)*

10

72. The Swift "Claims Department has the ability to download videos that are tied to a crash." (*Id*., p.83)

73. Defendant Swift has a choice of using Lytx event clips to conduct face-to-face coaching, remote coaching, or self-coaching of its drivers.

74. Defendant Swift chose to use Lytx event clips for self-coaching for its drivers.

75. With Self-Coaching Lytx event clips, each time a video triggered by an event is generated, both the driver and his or her coach get notifications that a new video is available for them to view.

76. Swift allows its drivers full access to all of their event videos via the company's online driver portal.

77. After logging into the Swift Driver Portal, the driver reviews the Lytx event clip, notes the behavior, and commits to improving.

78. Swift's driver's video coaching includes (*Id*., p.85):

**DRIVECAM SELF-COACHING**

Driver Leader's goals will be to monitor and ensure 100% completion. Driver Leaders will also monitor the behaviors that keep occurring. It will be the Driver Leaders responsibility to have a documented conversation with the driver and to utilize Swift's formal disciplinary process.

| SELF COACH |
| --- |
| Driver Unbelted (Roadway) |
| Driver Unbelted (Residential Roadway) |
| Driver Unbelted (Off Identifiable Roadway) |
| ER Obstruction/Abuse |
| Failed to Keep an Out |
| Food/Drink (Risky) |
| Passenger (Risky) |
| Not Looking Far Ahead |
| Blank Stare |
| Not Scanning Roadway |
| Not Scanning Intersection |
| Mirrors Not Checked |
| Judgment Error |

11

79.     Once the Swift driver closes the Lytx event clip, Swift fleet coaches can see that the session has been completed.

80.     Defendant Swift maintains, or has the ability to obtain and maintain, the Lytx event clips and coaching records for its drivers to include the Defendants Jacobsen and the video leading up to the wreck.

81.     Defendant Swift has, or should have, both the actual Lytx event clips and a record of the pre-wreck, wreck, and post wreck Lytx event clips for the Jacobsens together with a record of each such clip.

82.     Defendants Dennis Jacobsen and Mary Ann Jacobsen had a duty, at all relevant times, to inspect the tractor trailer before driving it to ensure the safety of citizens on the roads, interstates, and highways.

83.     Defendants Dennis Jacobsen and Mary Ann Jacobsen were professional truck drivers employed by Defendant Swift and had a duty to follow the laws of the State of Tennessee to ensure the safety of citizens on the roads, interstates, and highways.

84.     Defendants Dennis Jacobsen and Mary Ann Jacobsen were professional truck drivers employed by Defendant Swift and had a duty to follow the Federal Motor Carrier Safety Regulations to ensure the safety of citizens on the roads, interstates, and highways.

85.     Defendants Dennis Jacobsen and Mary Ann Jacobsen were commercial drivers for Defendant Swift.

86.     Defendants Dennis Jacobsen and Mary Ann Jacobsen were acting within the scope and course of the business of Defendant Swift.

87.     Upon information and belief, on or about Tuesday, August 14, 2024, Defendant Dennis Jacobsen was driving a tractor trailer South on Interstate 75.

12

88. It was approximately 1:50 A.M.

89. The weather was clear.

90. It was dark.

91. There were no obstructions in the Swift tractor interfering with its driver's ability to see the road and vehicles ahead.

92. There were no weather issues preventing the Swift tractor driver Dennis Jacobsen's ability to see ahead.

93. There were no medical conditions impacting the Swift tractor driver Dennis Jacobsen's ability to see ahead.

94. There were no medical conditions preventing Swift tractor driver Dennis Jacobsen's ability to stop.

95. Defendant Mary Ann Jacobsen was in the sleeper berth.

96. The sleeper berth is a short distance from the driver and is easily within visual and hearing distance of the driver.

97. The tractor trailer was carrying property.

98. Prior to the wreck Defendant Swift knew, or should have known, there was road construction on Interstate 75 southbound and appropriately advised its commercial drivers, the Jacobsens, of such construction.

99. Prior to the wreck, Defendants Dennis Jacobsen and Mary Ann Jacobsen knew, or should have known, there was road construction on Interstate 75 southbound.

100. Proper trip and route planning should have alerted commercial drivers, such as Defendant Jacobsens, of the slowing and or stopping of traffic caused by road construction on Interstate 75.

13

101.    Interstate 75 southbound has multiple signs and warning devices indicating road construction and alerting drivers to slow traffic.

102.    There was one or more signs warning of the construction zone before the location of the wreck alerting Defendant Dennis Jacobsen of the construction zone.

103.    Defendant Dennis Jacobsen, driving the Swift tractor, passed one or more warning signs indicating slow traffic and road construction on Interstate 75 southbound.

104.    As he approached the construction zone, the interstate narrowed to one lane.

105.    Ahead of the Swift Driver Jacobsen, cars and tractor trailers were braking, with red brake lights lit, as they slowed down from highway speeds due to the construction zone.

106.    Multiple vehicles successfully observed the construction zone traffic and were able to safely slow down.

107.    Construction workers were present in the construction zone as the Swift Tractor approached.

108.    Law enforcement vehicles, with active lights, were present in the construction zone.

109.    a.    The white Swift tractor did not slow down as it approached the traffic ahead.

        b.    The white Swift tractor's cruise control was on as it approached the traffic head.

110.    The white Swift tractor entered the construction zone at speed and approached the vehicles ahead of it.

111.    The white Swift tractor entered into the minimum space required to safely stop and kept moving forward.

112.    a.    Had the Swift tractor been equipped with a working collision avoidance system (CAS); forward collision warning system (FCW); Automatic Emergency Braking system (AEB);

14

and/or collision mitigation systems (CMS) the systems would have triggered due to the speed of approach of Swift tractor and the vanishing space required to stop.

b. Had the Swift tractor trailer been equipped with working brakes that were activated by its driver, the wreck would have been prevented or lessened.

c. Properly maintained tractor trailers, with working brakes and driven by safe alert commercial drivers, don't rear end the traffic in front of them in a construction zone.

d. Swift was aware, prior to the wreck, of the various studies showing the effectiveness of FCW and AEB systems reduced the rate of rear end collisions by over 40% and further that, on average, "speed was reduced by over half between the time of the intervention and impact for both systems."[2]

113.    Defendant Dennis Jacobsen failed to slow the white Swift tractor trailer (Vehicle 1), did not stop, and violently crashed into the rear of the white vehicle in front him (Vehicle 2), forcing it off the side of the Interstate.

114.    The speed and mass of the Swift tractor trailer was such that the first wreck did not stop the tractor trailer.

115.    The Swift tractor trailer, driven by Defendant Dennis Jacobsen, continued moving forward, crashing into the rear of Mr. Avina's green Jeep (Vehicle 3).

116.    The second wreck did not stop the Swift tractor trailer and it continued on with great force, hitting a red tractor trailer owned by Averitt Express (Vehicle 4).

---

[2] Insurance Institute for Highway Safety, Effectiveness of front crash prevention systems in reducing large truck crash rates, 09/24/2020, Teoh, Eric R.

117.     The remaining force, even after the two wrecks, slammed the white Swift tractor trailer into the rear of the red Averitt Express tractor trailer such that both tractor trailers left the highway.

118.     The Swift white tractor trailer's force pushed the Averitt red tractor trailer across the shoulder, onto private property and into a house before finally coming to rest as shown below.

119.     Multiple vehicles were totaled from the force of the impact.  The interstate was closed and traffic rerouted due to the multiple wrecks and the multiple fatalities.

120.     Due to the wreck, the Jeep driven by Pedro Daniel Avina-Sanchez caught fire and burned in the center of Interstate 75's southbound lanes.

121.     Inside the burning Jeep was Pedro Daniel Avina-Sanchez and his passenger.

122.     Pedro Daniel Avina-Sanchez died as a result of this wreck, as did his passenger.

123.     The Wreck was 100% the fault of one or more of the Defendants.

124.     a.   The wreck scene looked approximately like this:

16

V1 – Swift/Jacobsen – White Tractor Trailer
V2 – Stover – White Nissan Versa
V3 – Avina-Sanchez – Green Jeep Wrangler
V4 – Averitt/Lancaster – Red Tractor Trailer



I75S NEAR MM 128

V2 UNCONTROLLED FINAL REST

V3 UNCONTROLLED FINAL REST

V1 UNCONTROLLED FINAL REST

V4 UNCONTROLLED FINAL REST

Not To Scale

Case 3:25-cv-00393-KAC-JEM    Document 8    Filed 08/20/25    Page 17 of 34    PageID #: 72

b. With photographs showing the final resting place of the tractor trailers as shown here:



c. The white tractor has Swift's DOT number on it as shown here:



18

d. The trailer attached to the Swift tractor has Swift's logo on it as shown here:



125. At all times relevant hereto, Defendant Swift was acting by and through its employees/agents and is responsible for the acts of those employees and agents pursuant to *respondeat superior*, agency, negligent entrustment, negligent hiring of an independent contractor, or similar theory of law.

126. Swift Company policy after a crash is to:

  a. "Take photos of the crash or incident to include a photo of the truck number." (*Id.*, p.77 and p.81)

  b. Complete a "vehicle accident report" (*Id.*, p.79)

127. The wreck was caused by the negligence of the Defendants, the careless driving of Defendant Jacobsen, and the failure to stop the negligence of Defendant Daniel Jacobsen by Defendant Mary Ann Jacobsen.

128. Had Swift properly trained and supervised its drivers, and equipped, or required the tractor to be equipped, with a collision avoidance systems (CAS); forward collision warning

19

systems (FCW); Automatic Emergency Braking system (AEB); and/or collision mitigation systems (CMS) before using the tractor to pull Swift's loads, the wreck would not have occurred, or the impact would have at least been less severe, reducing the injuries to PEDRO DANIEL AVINA-SANCHEZ and saving his life.

129.    Properly hired, supervised, trained, alert, focused, healthy, non-distracted commercial drivers, free of any alcohol or drugs, following minimum industry standards, applicable regulations such as the FMCSR, and the laws, driving tractors with working safety equipment and brakes, don't rear end multiple vehicles in front of them in a construction zone.

130.    Properly hired, supervised, trained, alert, focused, healthy, non-distracted commercial drivers, free of any alcohol or drugs, following minimum industry standards, regulations, and the law, don't drive recklessly in a construction zone.

131.    Defendant Dennis Jacobsen has been criminally charged for his actions and inactions in causing the wreck, constituting a felony under the laws of the State of Tennessee.

132.    Defendant Dennis Jacobsen has been charged with multiple felonies, including, but not limited to:

        A.  Vehicular Homicide (*See:* TCA §39-13-213)

        B.   Vehicular Assault. (*See:* TCA §39-13-106)

133.    Defendant Dennis Jacobsen has been arrested in Utah for charges related to this wreck and is in the process of being extradited to Tennessee.

134.    Defendant Dennis Jacobsen's Initial Appearance occurred in the Third Judicial District, Salt Lake County District Court, Utah on August 18, 2025, in case number: 251909873

135.     No act of PEDRO DANIEL AVINA-SANCHEZ, or the Plaintiffs, was a cause of the wreck.

136.     No failure to act by PEDRO DANIEL AVINA-SANCHEZ, or the Plaintiffs, was a cause of the wreck.

137.     No person or entity, other than a Defendant named in this lawsuit, has fault for causing the wreck or contributing to the cause of the wreck.

138.     Swift is at all times both directly and vicariously responsible for the harms and losses to the Avina-Sanchez family, the Plaintiffs, due to negligence, *respondent superior*, agency, statutory employment doctrines, apparent agency, negligent entrustment, negligent hiring, negligent supervision, partnership, joint enterprise, or similar theories of direct and vicarious liability including those set forth above and below.

139.     The negligence, and gross negligence, of Swift, Swift driver Dennis Jacobsen, and/or Swift driver Mary Ann Jacobsen individually, or combined and concurring with the negligence of one or more of the other Defendants, was the legal and proximate cause of the death of Pedro Daniel Avina-Sanchez, and damages to Plaintiffs for which Plaintiffs are entitled to receive restitution for the past, present and future economic and non-economic damages to the extent allowed by law.

## COUNT I – NEGLIGENCE OF SWIFT

## NEGLIGENT HIRING, TRAINING, SUPERVISION, RETENTION, AND MAINTENANCE

140.     All preceding statements of Plaintiffs' Amended Complaint are incorporated herein and realleged as if expressly set forth herein.

141.     Regardless of the employment relationship, Defendant Swift is the registered owner

21

of U.S. DOT number 00054283, and Motor Carrier (MC) number 136818, displayed on the tractor involved in this wreck and is therefore responsible for the acts of the driver of that vehicle.

142.    Swift at all times was responsible for the employees it hired and allowed to drive its tractors.

143. Swift at all times was responsible for the maintenance of the tractor trailers it put on the road and for its drivers to properly inspect the brakes to ensure they are properly working.

144.    At all times relevant to this cause of action, Defendant Swift was subject to and required to obey the minimum safety standards established by the Federal Motor Carrier Safety Regulations (FMCSR) (49 CFR §§ 301-399), either directly or as adopted by the Tennessee Department of Transportation Safety Rules & Regulations 1340-6-1-.20 and pursuant to T.C.A. §§ 65-2-102 and 65-15-113.

145.    Defendant Swift will be shown at trial to have violated the Federal Motor Carrier Safety Regulations which constitutes negligence *per se*, including but not limited to:

    a.  §383  Commercial Driver's License Standards

    b.  §390  General

    c.  §391  Qualifications of Drivers

    d.  §392  Driving of Commercial Motor Vehicles

    e.  §393   Parts and Accessories Necessary for Safe Operation

    f.  §395  Hours of Service

    g. §396  Inspections, Repairs, and Maintenances

146.    Defendant Swift was required to teach and train Defendants Jacobsen so that they were able to understand and obey the rules and regulations contained in the FMCSR.

147. Defendant Swift was required to teach and train Defendants Jacobsen so that they were able to understand and obey the minimum industry standards for safe professional tractor trailer drivers.

148. Defendant Swift was negligent, and grossly negligent, in:

    a. failing to properly maintain the tractor-trailer;

    b. hiring and/or contracting with Defendant Dennis Jacobsen to drive the tractor trailer at issue;

    c. training of Defendants Jacobsen on the FMCSR and Commercial Driver's License Manual;

    d. failing to properly supervise Defendant Dennis Jacobsen while driving the tractor trailer;

    e. failing to train Defendant Dennis Jacobsen to properly drive the tractor trailer;

    f. failing to train Defendant Dennis Jacobsen to properly inspect the tractor trailer;

    g. retaining Defendant Dennis Jacobsen to drive the tractor trailer;

    h. failing to conduct proper and required checks on the background of their employees, agents and/or contractors, Defendants Jacobsen; and

    i. failure to exercise ordinary care to determine their employees' agents' and/or contractors' fitness for the task of driving a commercial vehicle on the interstate.

    j. failing to properly equip the tractor with collision avoidance system (CAS); forward collision warning system (FCW); Automatic Emergency Braking system (AEB), and/or collision mitigation system (CMS).

    k. failing to ensure that Defendants Jacobsen were medically fit and not under any intoxicating substances or prescriptions that would cause their judgment to be substantially impaired as to make driving unsafe. (FMCSR 392.3)

    l. failing to ensure that Defendants Jacobsen were driving within the maximum hours of service to prevent fatigued driving. (FMCSR 395 to specifically include 395.8 and 395 Subpart B – Electronic Logging Devices (ELDs))

    m. tractor trailers with working brakes are able to stop for traffic ahead.

23

149. Defendant Swift had a duty to promulgate and enforce rules and regulations to ensure its drivers, co-drivers and vehicles were reasonably safe and negligently and recklessly failed to do so.

150. Defendant Swift, through its agents and employees, knew, had reason to know, or should have known by exercising reasonable care, about the risks set forth in this Amended Complaint and that by simply exercising reasonable care these risks would be reduced or eliminated. These risks include, but are not limited to:

    a. The risks associated with improperly maintained and inspected tractor trailers,

    b. The risks associated with unsafe drivers and co-drivers,

    c. The risks associated with failing to train drivers to obey the FMCSR,

    d. The risks associated with failing to train drivers to follow minimum industry driving standards for commercial drivers,

    e. The risks associated with failing to train drivers to follow minimum inspection standards for commercial drivers,

    f. The risks associated with failing to train drivers to follow minimum maintenance standards for commercial drivers,

    g. The risks associated with failing to have adequate risk management policies and procedures in place,

    h. Failing to ensure its routes could be driven within hours-of-service,

    i. Requiring drivers to meet unrealistic driving goals which Swift knew, had reason to know, or should have known would cause its drivers to violate the hours-of-service regulations.

    j. Failing to have policies and procedures in place to identify undertrained and unqualified drivers.

    k. Failure to appropriately implement and enforce risk management policies and procedures to monitor and assess Defendants Jacobsen once they were hired.

    l. Failure to appropriately implement and enforce minimally adequate maintenance of its trucks and trailers.

m. Failing to implement and follow a written safety plan.

n. Failing to use the composite knowledge reasonably available to Swift to analyze the data available to it to identify the risk, take steps to reduce or eliminate the risk, and to protect members of the public from that risk, to include fatigue and intoxicants (to include prescriptions) impacting fatigue and judgment.

o. Despite knowing of the massive increase in safety to the motoring public by the use of accident mitigation safety systems as shown above, Defendant Swift recklessly authorized, ratified or approved the use of the tractor in this case without such systems.

p. Defendants Swift failed to retrofit, or require use of, a collision avoidance system (CAS); forward collision warning system (FCW); Automatic Emergency Braking system (AEB); and/or collision mitigation system (CMS) in the tractor with the knowledge, or conscious or reckless disregard of the knowledge, that the failure to use such systems would result in loss or injury to include death, particularly in rear end collisions.

q. Failing to train its drivers on the risks associated with construction zones.

r. Failing to appropriately implement and enforce risk management policies and procedures to identify the risks described above,

s. Failing to protect the members of the public, such as decedent, Pedro Daniel Avira-Sanchez, from the risks described above,

t. Such other actions or inactions that may be shown at a hearing of this cause.

151. Defendant Swift failed to exercise due care when it knew, or should have known, the legal and safe requirements of a motor carrier employing commercial CDL drivers and the driving of a tractor trailer as set forth above and negligently or deliberately allowing, aiding, abetting, and participating with Defendants Jacobsen in the active or negligent violation of the minimum safe industry standards, rules, regulations, and laws in effect resulting in Defendant Dennis Jacobsen driving the tractor trailer carelessly and erratically, failing to observe the warnings of road work ahead, the construction zone, driving in a reckless manner, improperly

25

following too close, disregarding the actual and potential hazards then existing, and causing the fatal wreck.

152.    The negligence and gross negligence of Defendant Swift is a proximate cause of the injuries sustained by Plaintiffs.

153.    As a result of Defendant Swift's negligence, and gross negligence, individually or combined and concurring with the negligence and gross negligence of the other Defendants, Pedro Daniel Avina-Sanchez died and Plaintiffs are entitled to recover restitution for their past, present, and future economic and non-economic losses to the extent allowed by law.

## COUNT II.  NEGLIGENCE OF SWIFT DRIVER DENNIS JACOBSEN

154.    All preceding statements and allegations of Plaintiff's Amended Complaint are incorporated herein and realleged as if expressly set forth herein.

155.    Had Swift equipped the, or required the use of a, tractor with a collision avoidance systems (CAS); forward collision warning systems (FCW); Automatic Emergency Braking system (AEB); and/or collision mitigation systems (CMS) the Dennis Jacobsen would have likely been able to avoid the wreck, saving the life of Pedro Daniel Avina-Sanchez.

156.    Without proper safe equipment assisting him in avoiding the wreck, Defendant Dennis Jacobsen was forced to rely on his own skills as trained and approved by Swift.

157.    At the time of the wreck, Defendant Dennis Jacobsen failed to exercise due care by driving the tractor trailer carelessly and erratically, failing to observe the warnings of road work ahead, having faulty brakes, driving in a reckless manner, improperly following too close, disregarding the actual and potential hazards then existing, and failing to perform a proper inspection of the tractor trailer when he knew, or should have known, of a problem with the brakes.

158.    The tractor trailer driven by Defendant Jacobsen was driven with the permission and at the direction of Defendant Swift.

159.    Upon information and belief, the tractor trailer driven by Defendant Jacobsen was driven in the course and scope of his employment with the business of Defendant Swift.

160.    At the time and place of this wreck, Defendant Jacobsen was generally negligent under the circumstances then and there existing in that he:

a.    failed to keep the Swift tractor under control;

b.    failed to keep a proper lookout;

c.    failed to timely apply his brakes, alter direction of travel, or take any other appropriate action when he, by the exercise of due and reasonable care, he should have seen the vehicles in front of him;

d.    failed to operate the Swift tractor in a safe and prudent manner in view of the conditions which existed at the time of the wreck;

e.    failed to stop or slow with the flow of traffic;

f.    failed to keep a safe and reasonable distance between the cars he was following and the Swift tractor-trailer (following too closely);

g.    operated the Swift tractor at an excessive speed;

h.    failed to yield the right of way;

i.    failed to inspect the tractor trailer in a manner considerate of the safety and lives of the others persons lawfully on the road;

j.    failed to operate the tractor trailer in a manner considerate of the safety and lives of the other persons lawfully on the road;

k.    drove in a reckless manner;

l.    drove under the influence of drugs, alcohol or another intoxicant or stimulant resulting in his intoxication causing his ability to safely observe what was available to be seen, stay alert, resulting in his judgment being substantially impaired;

m.    drove in excess of the maximum legal hours of service;

n.    drove in a fatigued state;

27

o.    failed to slow in the presence of law enforcement with active lights; and

p.    such other actions or inactions that may be shown at a hearing of this cause.

161.    Defendants' negligence proximately caused the wreck with Plaintiffs' Jeep and the resulting damages, injuries, and the eventual death of Pedro Daniel Avina-Sanchez.

162.    At the time and place of this wreck, Defendant Dennis Jacobsen was negligent *per se* in that he was violating one or more of the statutes of the State of Tennessee; to include but not be limited to:

| | | |
|---|---|---|
| a. | T.C.A. § 55-8-136 | Due Care |
| b. | T.C.A. § 55-10-205 | Reckless Driving |
| c. | T.C.A. § 55-8-103 | Failing to obey applicable traffic laws |
| d. | T.C.A. § 55-8-124 | Following too closely |
| e. | T.C.A. § 55-8-152 | Speed Limits |
| f. | T.C.A. § 55-8-153 | Establishment of Speed Zones |
| g. | T.C.A. § 55-9-204 | Brakes |
| h. | T.C.A. § 55-8-132 | Move Over and Reduce Speed Law |

163.    Defendant Dennis Jacobsen was subject to the "Federal Motor Carrier Safety Regulations" 49 CFR §§ 301-399 either directly, or as adopted by the Tennessee Department of Transportation Safety Rules & Regulations 1340-6-1-.20 and pursuant to T.C.A. §§ 65-2-102 and 65-15-113, at the time and date of the wreck.

164.    Defendant Dennis Jacobsen will be shown at trial to have violated one or more of the Federal Motor Carrier Safety Regulations which constitutes negligence *per se*, including but not limited to:

| | | |
|---|---|---|
| a. | §383 | Commercial Driver's License Standards |
| b. | §390 | General |
| c. | §391 | Qualifications of Drivers |

28

| d. | §392 | Driving of Commercial Motor Vehicles |
| e. | §393 | Parts and Accessories Necessary for Safe Operation |
| f. | §395 | Hours of Service |
| g. | §396 | Inspections, Repairs, and Maintenances |

165. Defendant Dennis Jacobsen will be shown at trial to have violated the State and Federal Motor Carrier Safety Regulations, which constitutes negligence *per se*.

166. That Defendant Dennis Jacobsen's has been charged criminally for his actions and inactions in causing the wreck, constituting a felony under the laws of the State of Tennessee. Defendant Dennis Jacobsen has been charged with, but not limited to:

A. Vehicular Homicide (*See*: TCA 39-13-213)

B. Vehicular Assault. (*See:* TCA 39-13-106)

C. Defendant Dennis Jacobsen has been arrested in Utah for charges related to this wreck and is in the process of being extradited to Tennessee.

167. At the time of the wreck, Defendant Dennis Jacobsen failed to exercise due care by knowing the legal and safe requirements of driving a tractor trailer set forth above and negligently or deliberately allowing, aiding, abetting, and participating with Defendant Swift and Defendant Mary Ann Jacobsen in the active or negligent violation of the minimum safe industry standards, rules, regulations, and laws in effect resulting in Defendant Dennis Jacobsen driving the tractor trailer carelessly and erratically, failing to observe the warnings of road work ahead, the construction zone, driving in a reckless manner, improperly following too close, disregarding the actual and potential hazards then existing, and causing the fatal wreck.

168. The negligence, and gross negligence, of Swift driver Dennis Jacobsen individually, or combined and concurring with the negligence of the other Defendants, was a legal and proximate cause of the damages to the Plaintiffs for which Plaintiffs are entitled to receive

29

restitution for past, present and future economic and non-economic damages to the extent allowed by law.

### COUNT III.  NEGLIGENCE OF SWIFT DRIVER MARY ANN JACOBSEN

169.    All preceding statements and allegations of Plaintiffs' Amended Complaint are incorporated herein and realleged as if expressly set forth herein.

To put the matter at issue,

170.    a.    Defendant Mary Ann Jacobsen is a CDL Driver and was aware at all times of the risks and dangers stated above.

b.    Defendant Mary Ann Jacobsen's negligence is under review for criminal prosecution and her actions and inactions are believed to constitute a felony under the laws of the State of Tennessee.

171.    Defendant Mary Ann Jacobsen was awake immediately before the wreck.

172.    Defendant Mary Ann Jacobsen was in hearing distance of Defendant Dennis Jacobsen and was aware, or should have been aware of his use of hand held electronic devices or other issues causing Dennis Jacobsen to be distracted.

173.    Defendant Mary Ann Jacobsen was in seeing distance of Defendant Dennis Jacobsen and was aware, or should have been aware of his driving in a distracted state.

174.    Defendant Mary Ann Jacobsen was aware of the sleep issues and fatigue of Dennis Jacobsen making it unsafe for him to drive a tractor trailer.

175.    Defendant Mary Ann Jacobsen was able to see out the front windshield due to her position in the berth area and should have alerted Dennis Jacobsen to his entry into the construction zone at speed and the traffic ahead.

176.    Defendant Mary Ann Jacobsen was able to see out the front windshield due to her position in the berth area and should have alerted Dennis Jacobsen to the impending wreck.

177.    At the time of the wreck, Defendant Mary Ann Jacobsen failed to exercise due care by knowing the legal and safe requirements of driving a tractor trailer set forth above and negligently or deliberately allowing, aiding, abetting, and participating with Defendant Dennis Jacobsen in the active or negligent violation of the minimum safe industry standards, rules, regulations, and laws in effect resulting in Defendant Dennis Jacobsen driving the tractor trailer carelessly and erratically, failing to observe the warnings of road work ahead, the construction zone, driving in a reckless manner, improperly following too close, disregarding the actual and potential hazards then existing, and causing the fatal wreck.

178.    Defendant Mary Ann Jacobsen's actions inactions, in failing to prevent the negligence of Dennis Jacobsen when she was aware of the danger, were negligent and reckless.

179.    Defendant Mary Ann Jacobsen was subject to the "Federal Motor Carrier Safety Regulations" 49 CFR §§ 301-399 either directly, or as adopted by the Tennessee Department of Transportation Safety Rules & Regulations 1340-6-1-.20 and pursuant to T.C.A. §§ 65-2-102 and 65-15-113, at the time and date of the wreck.

180.    Defendant Mary Ann Jacobsen will be shown at trial to have aided and abetted Dennis Jacobsen in violating one or more of the Federal Motor Carrier Safety Regulations, in violation of FMCSR §390.14, which constitutes negligence *per se*, including but not limited to:

    a.    §383   Commercial Driver's License Standards
    b.    §390   General
    c.    §391   Qualifications of Drivers
    d.    §392   Driving of Commercial Motor Vehicles
    e.    §393   Parts and Accessories Necessary for Safe Operation
    f.    §395   Hours of Service

g.      §396    Inspections, Repairs, and Maintenances

181.    Defendant Mary Ann Jacobsen will be shown at trial to have violated the State and Federal Motor Carrier Safety Regulations, which constitutes negligence *per se*.

182.    The negligence, and gross negligence, of Swift driver Mary Ann Jacobsen individually, or combined and concurring with the negligence of the other Defendants, was a legal and proximate cause of the damages to the Plaintiffs for which Plaintiffs are entitled to receive restitution for past, present and future economic and non-economic damages to the extent allowed by law.

## COUNT IV - DAMAGES

183.    All preceding statements and allegations of Plaintiffs Erin Avina, Individually, and as Personal Representative for Pedro Daniel Avina-Sanchez and as mother of the minor children, are incorporated herein and realleged as if expressly set forth herein.

184.    Plaintiffs, as a result of the Defendants negligence, regulatory, and statutory violations, have suffered a loss in the companionship, society, services, and consortium of one another.  Erin Avina lost her husband and the father of her children.

185.    The minor children have lost their father.

186.    These losses of consortium, and the past, present, and future economic and non-economic damages of the Plaintiffs, are the direct result of the actions, inactions, and the eventual wreck caused by the Defendants.

187.    Defendants knowingly, intentionally, recklessly, and/or willfully, disregarded minimum industry standards, the Federal Motor Carrier Safety Regulations, the laws of the State of Tennessee, and/or the rules of the road.

32

188.    One or more of the acts or inactions of the Defendants occurred while in a construction zone, or knowing the tractor and its drivers would likely enter a construction zone, making those actions and inactions reckless.

189.    Defendants' conduct constituted a conscious disregard for the life and safety of Pedro Daniel Avina-Sanchez, and for the lives and safety of the motoring public generally, and these Defendants are therefore liable to Plaintiffs for exemplary or punitive damages.

190.    That any limitations on damages, to include exemplary damages, imposed by the Tennessee Tort Cap statute (TCA 29-39-101 *et. seq*.) do not apply due to a listed exception to be shown at trial. Listed exceptions specifically include:

a.    Spoliation and intentionally falsified, destroyed or concealed records containing material evidence for the purpose of wrongfully evading liability.

c.    That the Defendant was under the influence of drugs, alcohol or any other intoxicant or stimulant resulting in the Defendant's intoxication causing his judgment to be substantially impaired.

b.    One or more of the Defendant's acts or omissions resulted in a Defendant being convicted of a felony under the laws of this state, another state, or under federal law, and those acts or omissions caused the damages or injuries to the Avina-Sanchez family.

191.    The actions or inactions of the Defendants as described above, individually or combined with the acts of another, were the legal and proximate cause of the damages to the Plaintiffs, and the Defendants are directly or vicariously liable for exemplary damages without limitation.

**WHEREFORE, PLAINTIFFS PRAY** that the following relief be granted:

a.    A trial by jury;

b.    For Summons and Amended Complaint to issue against the Defendants;

33

c. For full restitution to the extent allowed by law, in an amount the jury believes to be just, fair, and equitable after hearing the facts and issues in this case, not to exceed $150 Million Dollars;

d. For exemplary damages against Defendants Swift and Swift drivers Dennis Jacobsen, and Mary Ann Jacobsen, in an amount the jury believes to be just, fair and equitable, after hearing the facts and issues in this case, to the full extent allowed by law, not to exceed $200 Million Dollars;

e. Interest, court costs, and discretionary costs as appropriate; and

f. For all such further and general relief which this Court deems just and proper.

Respectfully submitted,

**TRUCK WRECK JUSTICE, PLLC**

BY: /s/ *Morgan G. Adams*

    **MORGAN G. ADAMS, BPR#013693**
    Attorney for Plaintiffs
1419 Market Street
Chattanooga, Tennessee 37402
Telephone: (423) 265-2020
Fax: (423) 265-2025
Email: adams@truckwreckjustice.com

34